UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ENGINEERED COMFORT SYSTEMS, INC.,

      Plaintiff,

-v-                                    Case No. 2:24-cv-10924
                                          Hon. Gershwin A. Drain

ASAP AIR MECHANICAL TEAM, INC.,
VERONICA PAS-BORREGO and
THEODORE BORREGO,

      Defendants.

_____

## PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT PURSUANT TO FED. R. CIV. P. 37

Plaintiff, Engineered Comfort Systems, Inc. ("ECS"), respectfully moves this Court for entry of an order under Fed. R. Civ. P. 37(b)(2)(A) sanctioning Defendants Theodore Borrego ("Borrego"), Veronica Paz-Borrego ("Paz-Borrego"), and ASAP Air Mechanical Team, Inc. ("ASAP") (collectively, "Defendants") for their violations of the Court's Order dated January 3, 2025.

In conformity with Fed. R. Civ. P. 37 (a)(1) and E.D. Mich. L.R. 7.1 (a), the undersigned certifies that counsel for ECS sent a detailed letter to counsel for Defendants concerning the violations discussed herein and otherwise attempted to confer with Defendants' counsel on the relief requested in this motion and the basis for same. Defendants' counsel did not substantively respond to the letter, did not agree to make himself available to counsel for ECS to discuss the letter, and/or did

not agree to resolve the issues discussed in the letter. Rather, Defendants' counsel

claimed that he longer had authority to act on behalf of Defendants due to an alleged

breakdown in his attorney-client relationship.

Although Defendants' counsel has since filed a motion to withdraw, which

ECS indicated that it objected to on a limited basis,[1] Defendants' counsel did not

refer counsel for ECS to other counsel for Defendants (beyond a general note that

Defendants had retained unidentified bankruptcy counsel); did not indicate if the

individual Defendants planned to respond to the letter directly; and/or did not

indicate if Defendants intended to address the issues in the letter directly with their

putative new counsel.[2]

---

[1] ECS objected to the withdrawal of Defendants' lead counsel only to the extent that withdrawal would prevent ECS from seeking appropriate sanctions from the attorneys for their role (if any) in delaying the proceedings by, *inter alia*, significantly delaying document discovery (where Defendants apparently had no intention of producing certain documents) and necessitating otherwise unnecessary motion practice by rescinding their putative agreement to multiple proposed stipulated resolutions of issues (that subsequently required otherwise unnecessary motion practice).

[2] Notably, Defendants' lead counsel's motion to withdraw did not reference any other counsel representing Defendants on bankruptcy or other matters that may be related to this case. To the contrary, the motion asked the Court to grant Defendants additional time to engage a new attorney to represent them in this action, and to adjourn the scheduling order accordingly. Since the Court granted this relief, counsel for ECS has refrained from contacting Defendants directly regarding this motion, but the issues raised in this motion and notice of same (including attempts to seek concurrence) were already perfected prior to the time of order granting Defendants' lead counsel's motion to withdraw. Accordingly, ECS brings this motion now, but with an understanding that the Court may delay briefing and/or hearing pending an

171303178v2

The discovery violations noted in the letter are the subject of a prior Court Order, are habitual, and are significantly impending this action. Under the circumstances, counsel for ECS believes they have fully discharged their obligations under E.D. Mich. L.R. 7.1(a), and there is a good faith basis to bring this motion now.

WHEREFORE, ECS respectfully requests the entry of an order in substantially the same form as the attached **Exhibit A**:

(1) Entering a default against Defendants, finding them liable on all counts of the complaint; and

(2) Awarding ECS its sanctions incurred in bringing this motion pursuant to Fed. R. Civ. P. 37(b)(2)(C).

Respectfully submitted,

Dated: February 19, 2025

TAFT STETTINIUS & HOLLISTER LLP

By:   /s/ Stuart M. Schwartz
      Stuart M. Schwartz (P62752)
      T. Andrew Keating (P86261)
      *Attorneys for Plaintiff*
      27777 Franklin Rd., Ste. 2500
      Southfield, MI 48034
      (248) 727-1512
      sschwartz@taftlaw.com
      akeating@taftlaw.com

---

appearance from a new attorney for Defendants. To the extent no such appearance is forthcoming, within the time prescribed in the Court's order, ECS would ask that the Court also consider same in connection with this motion (both substantively, and in terms of the time to take up this motion).

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ENGINEERED COMFORT SYSTEMS, INC.,

       Plaintiff,

-v-                                  Case No. 2:24-cv-10924
                                      Hon. Gershwin A. Drain

ASAP AIR MECHANICAL TEAM, INC.,
VERONICA PAS-BORREGO and
THEODORE BORREGO,

       Defendants.
_____

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION
FOR ENTRY OF DEFAULT PURSUANT TO FED. R. CIV. P. 37**

# TABLE OF CONTENTS

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**......................1

**CONCISE STATEMENT OF ISSUES PRESENTED**........................................2

**INTRODUCTION**........................................................................................................1

**BACKGROUND** .........................................................................................................3

**ARGUMENT** ...........................................................................................................12

**CONCLUSION**.........................................................................................................18

## <u>INDEX OF EXHIBITS</u>

Exhibit A: Proposed Order Granting Plaintiff's Motion for Entry of Default

Exhibit B: 2/3/25 Correspondence from Plaintiff's Counsel

Exhibit C: 2/7/25 Correspondence from Defendants' Counsel

Exhibit D: Burks v Washington (ED Mich, March 23, 2023)

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Pursuant to E.D. Mich. L.R. 7.1 (c)(2), Plaintiff, Engineered Comfort Systems, Inc., states that the controlling/most appropriate authority for the relief requested is Fed. R. Civ. P. 37(b)(2)(A).

In addition, this Court's decision in *Burks v. Washington*, No. 19-CV-10027, 2023 WL 2612607 (E.D. Mich. Mar. 23, 2023) (Drain J.) (**Ex D**) contains a comprehensive discussion of Sixth Circuit caselaw regarding the standards for granting dispositive relief as a discovery sanction.

171303178v2

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1. Where Defendants—

    a. violated the Court's Temporary Restraining Order dated July 29, 2024;

    b. failed to serve initial disclosures;

    c. failed to timely respond to discovery requests, necessitating a motion to compel; and

    d. failed to comply with the Order granting the motion to compel dated January 3, 2025, by withholding documents and other information that the Court ordered Defendants to produce

    Should the Court enter a default against Defendants as a sanction for failure to comply with a discovery order under Fed. R. Civ. P. 37(b)?

**Plaintiff answers: Yes.**

2. Should the Court award ECS its attorneys' fees incurred in the motion under Fed. R. Civ. P. 37(b)(2)(C)?

**Plaintiff answers: Yes.**

171303178v2

Plaintiff, Engineered Comfort Systems, Inc. ("ECS"), states as follows in support of its motion for entry of default and for other relief against Defendants Theodore Borrego ("Borrego"), Veronica Paz-Borrego ("Paz-Borrego"), and ASAP Air Mechanical Team, Inc. ("ASAP") (collectively, "Defendants"):

## **INTRODUCTION**

This case arises from Defendants' wrongful (and secreted) solicitation of ECS's clients, and Defendants' corresponding conspiratorial theft of an untold number of business opportunities and considerable revenue. At the outset of discovery, ECS served Defendants with written discovery requests (the "Discovery Requests"), which sought to determine the full extent and monetary amount of Defendants' diversion of business to themselves.

Defendants refused to comply with their discovery obligations. Defendants never served their initial disclosures. Defendants also failed to timely respond to the Discovery Requests. And when Defendants finally did respond, they produced only 26 pages of documents—nearly half of which were blank—and responded to most of the Discovery Requests with unresponsive boilerplate objections.

Then, in mid-December, after the parties had met and conferred for months and had agreed on nearly all materials terms of a proposed stipulated order to resolve the discovery issues, Defendants refused to sign the order, necessitating a motion to

1

compel. In an order dated January 3, 2025 (the "Order"), the Court compelled Defendants to, *inter alia*, respond to the Discovery Requests in full.

Defendants refused to comply with the Order. For instance, Defendants provided a "supplemental" discovery production in response to the Order, but Defendants included no emails, text messages, or other written communications with ECS's customers and employees, despite the Order's plain requirement that they do so. Likewise, Defendants refused to produce Borrego's and Paz-Borrego's bank records, despite Defendants' counsel's acknowledgement that Defendants had such documents and the Court's Order that these be produced.

This is not Defendants' first violation of an order of this Court. The Court's Temporary Restraining Order dated July 29, 2024 ("TRO") prohibits Borrego from providing services on behalf of any of ECS's competitors. But Borrego has admitted to working for CSM Mechanical, a direct competitor of ECS.

Defendants have repeatedly failed and/or refused to comply with their discovery obligations and the orders of this Court. This misconduct has forced ECS to waste substantial time and resources to secure Defendants' compliance, and it has denied ECS evidence necessary to better establish its damages (as well as denied ECS's ability to ascertain the breadth of continuing violations of this Court's injunctive orders and the breach of Borrego's employment agreement). And, in light of Defendants' history of noncompliance, a lesser sanction than a default would not

171303178v2

improve Defendants' behavior and would only serve to prolong the proceedings. For these reasons, and those that follow, ECS respectfully requests sanctions in the form of (1) an entry of default against all Defendants and (2) an award of ECS's attorneys' fees incurred in bringing this motion.

## BACKGROUND

### *History of the Dispute.*

Defendant Borrego worked for Plaintiff ECS from 2011 through October 2023. Borrego's Employment Agreement with ECS (the "Employment Agreement") prohibits him from, *inter alia*, soliciting ECS's customers and hiring away ECS's employees. [Employment Agreement, ECF No. 1-1.] However, as early as February 2017—while Borrego was still employed by ECS—Borrego and his wife, Veronica Paz-Borrego, surreptitiously formed Defendant ASAP. ASAP operates in the same line of business as ECS, and has operated out of Borrego's home since at least 2018.

Borrego, on behalf of ASAP and/or CSM Mechanical ("CSM"), his current employer, solicited and/or serviced several of ECS's customers. As discussed in detail in ECS's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 19], Borrego, through ASAP and Paz-Borrego, began quoting and providing services to the Atlantic III Condominium Association in Aventura, Florida ("Atlantic III"), beginning (at the latest) in early 2022, while Borrego was still

171303178v2

employed with ECS. [ECF No. 19, PageID.156-59.][3] Defendants also solicited other ECS customers and attempted to recruit at least three of ECS's employees away from ECS. [*Id.* at 160.] On April 10, 2024, ECS filed this lawsuit, alleging, *inter alia*, breaches of the Employment Agreement; tortious interference with ECS's contractual and business relationships; various forms of fraud, embezzlement, and/or theft; and violations of the Lanham Act. [*See generally* Complaint, ECF No. 1.]

## The TRO.

The Court entered a TRO on July 29, 2024, prohibiting Defendants from soliciting ECS's customers or employees and prohibiting Borrego from providing services on behalf of any entity competitive with ECS. [ECF No. 21.] The Court held hearings on the motion on August 9, 2024, and September 4, 2024, and issued an opinion and order granting the motion for preliminary injunction on August 5,

---

[3] ECS learned that ASAP was quoting services to Atlantic III after a representative of ECS spoke with a representative of Atlantic III. [*Id.* at PageID.159.] Apparently, ASAP had represented that it was affiliated with ECS, that ECS was being sold, or that ECS was no longer a going concern, and, as a result, Atlantic III did not realize that it was receiving quotes and services from ECS's competitor. [*Id.*] Upon learning of its misapprehension, Atlantic III provided ECS with various emails with ASAP showing that Borrego, Paz-Borrego, and ASAP repeatedly solicited and provided services to Atlantic III. [*Id.*; Bids and Invoices, ECF No. 19-8 through 19-13.] As discussed below, Defendants have not produced most of the emails from Borrego and Paz-Borrego that ECS obtained from Atlantic III, indicating that Defendants have not performed a meaningful search for documents responsive to ECS's discovery requests.

171303178v2

2024. *See Engineered Comfort Sys., Inc. v. Borrego*, No. 24-CV-10924, 2024 WL 4063553 (E.D. Mich. Sept. 5, 2024).

The Court found that ECS demonstrated a "strong likelihood of success on the merits" on its claims because, among other reasons, Defendants admitted to servicing at least two of ECS's customers (in violation of Borrego's non-solicitation agreement) and did not dispute attempting to hire ECS's employees:

> The Court finds that ECS has demonstrated a strong likelihood of success on the merits. As argued, Defendants acknowledge that Borrego is party to a contract with ECS that prohibits, inter alia, soliciting or servicing ECS's customers and attempting to hire ECS's employees. ECF No. 22, PageID.261. Defendants also freely admit to servicing at least two of ECS's customers, *id.*, PageID.262, do not dispute attempting to hire ECS's employees, *see id.*, PageID.263, and acknowledge that Borrego "obtained ... the identity of [ECS's] clients" through his employment with ECS, *id.*, PageID.267. **Notably, Defendants acknowledge that Paz-Borrego formed ASAP for the purpose of subverting Borrego's non-competition obligations (or as Defendants euphemize it, facilitating Borrego's attempt to "explore working independently").** *Id.*, at PageID.266.

*Id.* at \*5 (emphasis added).

The TRO, which appears to remain in effect to this day (as the Court has not yet dissolved it or issued an alternative order following from its order granting ECS's motion for preliminary injunction), provides that Defendants, including Borrego, may not "provide services on behalf of ASAP or any other business that offers services competitive with those offered by ECS." [ECF No. 21, PageID.255.] Nonetheless, Borrego has admitted to working for CSM Mechanical, one of ECS's

5

direct competitors in the HVAC industry. [Interrogatory Response No. 15, ECF No. 38-7, PageID.485.]

### ***Defendants Knowingly and Intentionally Failed to Comply with their Discovery Obligations.***

On September 18, 2024, after ECS served its initial disclosures, ECS served the Discovery Requests on Defendants, which included Requests for Admission ("RFAs"), Interrogatories, and Requests for Production ("RFPs"). [Discovery Requests, ECF No. 38-3.] Defendants served no responses or objections to the Discovery Requests within 30 days as required under Fed. R. Civ. P. 33(b)(2), 34(b)(2), and 36(a)(3). Defendants also never served initial disclosures.

As detailed in ECS's Motion to Compel, the parties met and conferred over several months (and numerous emails and phone calls) regarding Defendants' discovery deficiencies. [*See generally* ECF No. 38, PageID.385-87.] Defendants eventually served belated discovery responses, long after they were due and only after ECS was required to threaten motion practice. [*Id.*] The belated responses were plainly inadequate: the responses were replete with boilerplate objections, and Defendants produced only 26 pages of documents (half of which were blank). [*Id.* at 386.]

Nonetheless, ECS continued to meet and confer with Defendants. After the parties reached agreement on nearly all material terms for a stipulated order to resolve the discovery issues, Defendants suddenly backed out of the negotiations on

the proposed order. [*Id.* at PageID.387.] ECS was thus forced to file a motion to compel. [ECF No. 38.]

### *The Order.*

Judge Stafford[4] granted ECS's motion on January 3, 2025, and ordered that Defendants, *inter alia*, produce all documents responsive to the Discovery Requests and respond in full to each of ECS's interrogatories by January 10, 2025. [Order, ECF No. 40, ¶2.] Furthermore, Borrego and Paz-Borrego were required to submit affidavits to the Court explaining the extent of their search for documents and explaining the disappearance of any documents that they claimed to no longer possess:

> Within 7 days of entry of this Order, Borrego and Paz-Borrego shall file affidavits with the Court (1) attesting that they are not aware of any information responsive to any of the interrogatories that has not been disclosed in response to the interrogatories; (2) attesting they have produced all documents in their possession, custody, and/or control that are responsive to any of the Discovery Requests; and (3) **if and to the extent any information and/or documents responsive to the Discovery Requests is no longer in their possession, custody and/or control, describing, in detail, and not generalities, the circumstances that occasioned the unavailability of such information and/or documents.** The affidavits shall further describe, with specificity, the nature of the search for responsive documents and information that Defendants performed for each of the Discovery Requests, including identifying which computers, electronic devices, email accounts, files, and physical records that they searched.

[*Id.* ¶ 3 (emphasis added).]

---

[4] This Court referred the motion to compel to Judge Stafford. [ECF No. 39.]

171303178v2

### *Defendants' Plain and Knowing Violation of the Order.*

Defendants supplemented their production and produced affidavits on January 10, 2025.[5] But Defendants did not comply with several significant aspects of Judge Stafford's Order. For instance, paragraphs 2(i) and 2(k) of the Order required Defendants to produce their communications with ECS's current and former customers and with CSM, Borrego's current employer.[6] Yet Defendants' supplemental production contained absolutely *no* emails, text messages, or other correspondence with these individuals or entities. Borrego and Paz-Borrego also did not produce their personal bank statements, despite the Order's mandate that Defendants produce "*all* monthly bank statements for *each of the Defendants*." [Order, ECF No. 40, ¶2(m) (emphasis added).]

It is not as if Defendants do not possess these documents. Regarding the monthly bank statements, Defendants' counsel has acknowledged that Borrego and Paz Borrego have personal bank accounts. [*See* Email dated 12/18/24, ECF No. 38-5, PageID.465-66 ("My clients . . . are not agreeing to provide the personal bank

---

[5] ECS is unable to attach a copy of Defendants' supplemental document production to this motion because the entire production was designated as "Confidential" under the stipulated protective order entered in this case.

[6] Paragraph 2(i) requires Defendants to produce all communications with persons or entities listed on Exhibits B and C to the Discovery Requests. Exhibit B is a list of ECS's current or former customers [ECF No. 38-3, PageID.441], and Exhibit C is a list of ECS's current or former employees [ECF No. 38-3, PageID.456].

8

account statements at this time. They believe it is simply meant to harass and embarrass them at this stage of the litigation.")].

It also impossible that Defendants would have *no* communications with ECS's customers in their possession, custody, or control. Borrego has already admitted to "being involved in HVAC sales" with several of ECS's customers. [Response to Interrogatory No. 2, ECF No. 38-7, PageID.478.] Further, several of Defendants' emails with Atlantic III Condominiums, one of ECS's customers, have been filed *with this Court*. See below for just one example:



[ECF No. 19-10, PageID.211] [*See also* ECF No. 19-11, PageID.214 (another email between Paz-Borrego and Atlantic III); ECF No. 19-12, PageID.217 (yet another

171303178v2

email between Paz-Borrego and Atlantic III); ECF No. 19-13, PageID.227 (email between Paz-Borrego and Atlantic III with Defendant Borrego copied).][7]

The Order plainly requires Defendants to produce these communications. [Order, ¶2(i).] Defendants clearly are (or were) in possession of these communications, but they never produced them. Despite this, Defendants claimed in sworn affidavits to the Court that "I have produced all documents in my possession, custody, and/or control that are responsive to the Discovery requests that I am aware of." [Aff. of Borrego, ECF No. 41-1, PageID.553; Aff. of Paz-Borrego, ECF No. 41-2, PageID.556.] Thus, Defendants have violated the Order by failing to produce documents in their possession (or failing to provide an explanation as to why they no longer have the documents, as required by the Court's Order), and

---

[7] ECS was only able to obtain these emails through a third-party source. Under the circumstances, ECS does not believe these emails represent all communications between Defendants and ECS's clients. To that end, it is evident that Defendants are acting in such as a way as to allow ECS to proceed in this action based solely on what it already knows and has presented to Defendants and this Court. This is directly contrary to the purpose and intent of discovery. Indeed, the rules of discovery "do not permit parties to withhold material simply because the opponent could discover it on his or her own." *Abrahamsen v. Trans-State Exp., Ind.*, 92 F.3d 425, 428 (6th Cir. 1996).

Moreover, many of these emails have invoices or quotes attached to them describing HVAC services provided (or to be provided) by ASAP, directly contradicting Borrego's sworn testimony to the Court in an affidavit that "ASAP did not install or provide HVAC services." [Aff. of Borrego, ECF No. 41-1, PageID.553.] Borrego's obvious misrepresentation in a sworn document only further confirms that dispositive sanctions are appropriate.

171303178v2

possibly perjured themselves by testifying (falsely) that all documents have been turned over.

Defendants might claim that they possessed these documents at some point, but no longer have them. This does not get them off the hook. The Order requires Defendants to "explain circumstances that occasioned the unavailability" of any documents that they no longer possess. [Order, ECF No. 40, ¶3.] Defendants did not provide this required explanation in their affidavits submitted to the Court. Thus, Defendants either (1) violated the Order by refusing to produce documents that the Order compelled them to produce or (2) violated the Order by refusing to explain the disappearance (or more likely destruction) of these documents.

Attempting to meet and confer on these issues (and other issues), ECS sent yet another letter to Defendants' counsel on February 3, 2025, asking for them to cure these violations of the Order. [2/3/25 Correspondence, **Ex B**.] Instead, several days later, ECS's counsel responded that he could not address the issues raised in the correspondence because he intended to withdraw from the lawsuit. He indicated that Defendants were now represented by bankruptcy counsel, but did not provide any information regarding how the other attorneys could be reached.[8] [2/7/25 Correspondence, **Ex C**.]

---

[8] This is remarkably similar to Defendants' counsel's prior refusal to enter into a stipulated order prior to ECS's motion to compel because one of the Defendants intended to meet with a bankruptcy attorney. [ECF No. 38-5, PageID.463-464.] To

11

Since ECS has been unable to secure concurrence to resolve Defendants' continuing, willful violations of the Order, ECS now moves for sanctions, including an entry of default against Defendants.

## **ARGUMENT**

Fed. R. Civ. P. 37(b)(2)(A) allows a party to bring a motion for sanctions when a party violates a court order regarding discovery. On a finding that a party has violated the order, the court may sanction the offending party by:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

---

be clear, two months after counsel said that, ECS has not received notice that Defendants have filed bankruptcy or that any automatic stay has issued. Notably, in Defendants' counsel's motion to withdraw, they did not refer to Defendants' intention to file bankruptcy or provide contact information for any bankruptcy attorneys. To the contrary, Defendants' counsel requested that Defendants be provided with additional time to retain *new* counsel. [ECF No. 43.]

Fed. R. Civ. P. 37(b)(2)(A). In addition, the court "must order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney fees, caused by the failure…." Fed. R. Civ. P. 37(b)(2)(C).

A default as a discovery sanction is available where there is "a clear record of delay or contumacious conduct by the offending party and when 'no alternate sanction would protect the integrity of the pre-trial proceedings." *Kropf v. TCA, Inc.*, No. 10-11989, 2011 WL 13377952 (E.D. Mich. June 9, 2011) (internal citations omitted).[9] In evaluating a dispositive sanction, the Court should consider

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the [sanctioned] party's failure to cooperate in discovery; (3) whether the [sanctioned] party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997) (internal citations and quotation marks omitted). Although *Harmon* discussed dismissal of a complaint, the Sixth Circuit have found its analysis equally appliable to Rule 37 sanctions, including motions for default. *See Burks v. Washington*, No. 19-CV-

---

[9] ECS is seeking a default, rather than a default judgment, because it has not been able to ascertain its total damages yet (in large part due to Defendants' refusal to provide records and other documents that could aid in quantifying ECS's lost business as a result of Defendants' conduct). Rule 37 uses the term "default judgment," but a simple default is an equally available remedy under Rule 37. *Kropf*, 2011 WL 13377952, at *1 n.2.

13

10027, 2023 WL 2612607, at *8 (E.D. Mich. Mar. 23, 2023) (Drain, J.) (applying *Harmon* factors in affirming magistrate judge's award of default judgment).

### *Harmon* Factor 1.

The first *Harmon* factor considers "whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Harmon*, 110 F.3d at 366-67. "The non-compliant party 'has the burden of showing that his failure to comply was due to inability, not willfulness or bad faith.'" *Burks*, 2023 WL 2612607, at *8 (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)). Here, there is no evidence that Defendants tried in good faith to comply with their discovery obligations or the Court's Order.[10] As noted, there are documents that are necessarily in Defendants' possession—including, but not limited to, their emails with Atlantic III, which have been previously filed with the court—that Defendants have refused to produce, despite the requirements of the Order. There is no evidence that Defendants' failure to produce these documents was due to the inadvertent destruction of documents or other circumstances outside of Defendants' control.

---

[10] Although Defendants ultimately produced some documents in response to the Order, producing documents alone does not amount to "good faith" that would preclude a sanction under Rule 37. *See Burks*, 2023 WL 2612607, at *10 (Drain, J.) ("Defendants' production of 1,200 documents prior to November 30, 2020 is not impressive because Plaintiff was forced to jump through numerous hoops—aided by the Court—to obtain it."); *see also ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. Appx. 577, 582 (6th Cir. 2018) (rejecting the plaintiff's argument that its conduct was "not willful or contumacious" because it had "produc[ed] 18,000 documents" and affirming dispositive sanction under Rule 37(b)).

171303178v2

Indeed, Defendants have provided *no* explanation for why these documents were not produced, despite the Order's requirement that such an explanation be provided. [Order, ECF No. 40, ¶3.]

Defendants either refused to produce responsive documents (in violation of the Order) or refused to provide an explanation for why they no longer had them—also in violation of the Order. There is no basis for Defendants to claim that their noncompliance was in good faith. The first *Harmon* factor favors a default.

### *Harmon* Factor 2.

The second *Harmon* factor considers "whether the adversary was prejudiced by the [sanctioned] party's failure to cooperate in discovery." *Harmon*, 110 F.3d at 366-67. Defendants' consistent refusal to provide full and complete discovery responses—including requested invoices, communications, and financial records—has prevented ECS from determining the full extent of the customers and employees of ECS that Defendants solicited. It has also prevented ECS from determining the amount of money that Defendants derived from services provided to ECS's clients. ECS thus has no way of knowing the total extent of its lost business. From this alone, ECS has been highly prejudiced by Defendants' failure to participate in discovery and failure to comply with the Court's Order.

Moreover, under the second *Harmon* factor, a "party is prejudiced by the opposing party's discovery misconduct where it is 'unable to secure the information

15

requested' and 'required to waste time, money, and effort in pursuit of cooperation which [the delinquent party] was legally obligated to provide.'" *Burks*, 2023 WL 2612607, at *16 (Drain, J.) (quoting *Harmon*, 110 F.3d at 368). Given ECS's extensive efforts to secure Defendants' complete responses to the Discovery Requests, ECS was required to waste substantial time and money that would have been unnecessary if Defendants had timely and completely responded. Between ECS's wasted time and resources and its inability to obtain information to which it was entitled—both as a direct result of Defendants' noncompliance with the Order and the Rules of Civil Procedure—ECS has absolutely been prejudiced.

### *Harmon* Factor 3.

The third *Harmon* factor considers whether the sanctioned party "was warned that failure to cooperate could lead to dismissal." *Harmon*, 110 F.3d at 366-67. Although this is one (non-dispositive) factor in the *Harmon* analysis, "a court is not, in fact, required to warn a party before imposing the most severe discovery sanctions where there is a record of bad faith or contumacious conduct." *Burks*, 2023 WL 2612607, at *19 (Drain, J.).

Defendants have failed to comply with their discovery obligations for months now, and have been in violation of a Court Order for nearly two months. This is not Defendants' first failure to comply with discovery obligations, either. As noted, Defendants never served their initial disclosures and never served *any* timely

171303178v2

response to the Discovery Requests. Nor is it Defendants' first violation of a Court order. Borrego has previously admitted to working for CSM Mechanical, another HVAC company. [Response to Interrogatory No. 15, ECF No. 38-7, PageID.485.] This directly violates the Court's prior order (which as noted above, remains in effect pending entry of a preliminary injunction) providing that "Borrego shall not provide services on behalf of ASAP *or any other business that offers services competitive with those offered by ECS*." [TRO, ECF No. 21, PageID.255 (emphasis added).] A warning before default would only further prolong these proceedings, and it is not required under *Harmon*.

### *Harmon* Factor 4.

The final *Harmon* factor is whether "less drastic sanctions were imposed or considered before dismissal was ordered." *Harmon*, 110 F.3d at 366-67. This factor favors a default judgment or similar relief where lesser sanctions were insufficient to coerce the defendant into complying with court-imposed obligations. *See Burks*, 2023 WL 2612607, at *20. Less drastic sanctions already have been imposed in this case; specifically, Judge Stafford awarded ECS its fees incurred in bringing its Motion to Compel and deemed ECS's requests for admission admitted. [ECF No. 40, ¶¶4-5][11] These lesser sanctions have apparently failed to convince Defendants of

---

[11] The Order specified that the amount of fees awarded would be fixed by motion "if they cannot be agreed upon by the parties." [Order, ECF No. 40, ¶5.] ECS asked Defendants to stipulate to a fee amount, but Defendants' counsel did not engage with

the importance of fully complying with their discovery obligations, as Defendants violated the Order even *after* issuance of these sanctions, and they have refused to cure the violations. Because lesser sanctions have been tried and have failed, a dispositive sanction is proper in this case.

## CONCLUSION

WHEREFORE, ECS respectfully requests the entry of an order in substantially the same form as the attached **Exhibit A**:

(1) Entering a default against Defendants, finding them liable on all counts of the Complaint; and

(2) Awarding ECS its sanctions incurred in bringing this motion pursuant to Fed. R. Civ. P. 37(b)(2)(C).


Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

Dated: February 19, 2025      By:   /s/ Stuart M. Schwartz
                                    Stuart M. Schwartz (P62752)
                                    T. Andrew Keating (P86261)
                                    *Attorneys for Plaintiff*
                                    27777 Franklin Rd., Ste. 2500
                                    Southfield, MI 48034
                                    (248) 727-1512
                                    sschwartz@taftlaw.com
                                    akeating@taftlaw.com

---

the fee request prior to withdrawal. It appears that Defendants have no intention of offering to pay ECS any amount of the attorneys' fees awarded.

171303178v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2025, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

Respectfully submitted,

By: _/s/ Stuart M. Schwartz_____
**Taft Stettinius & Hollister LLP**
Stuart M. Schwartz (P62752)